## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GARRY HAYGOOD and
HAYGOOD FAMILY
INVESTMENTS, LLC,

                **Plaintiffs,**

    **v.**

COMMUNITY & SOUTHERN
BANK and FDIC AS RECEIVER
OF APPALACHIAN COMMUNITY
BANK,

                **Defendants.**

                                  **1:12-cv-295-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendant Community & Southern

Bank's ("CSB") Motion to Dismiss Plaintiff's First Amended Complaint [11],

Gary Haygood ("Haygood") and Haygood Family Investments, LLC's ("Haygood

Family Investments," collectively "Plaintiffs") Motion for Leave to File Surreply

in Opposition to CSB's Reply Brief in Support of its Motion to Dismiss [18], and

Defendant Federal Deposit Insurance Corporation, in its capacity as receiver of

Appalachian Community Bank's ("FDIC-R") Motion to Dismiss [20].

# I.    BACKGROUND

In 2007, Alan S. Dover ("Dover"), "a Director/Officer or other agent of Defendant CSB and/or CSB's predecessor Appalachian Community Bank and its affiliate Gilmer County Bank," solicited an investment from Haywood in a real estate project in Gilmer County, Georgia (the "Falling Waters Project"). (Am. Compl. ¶¶ 5-6). Haygood initially refused Dover's request and cited a lack of funds as his reason for not investing in the Falling Waters Project. (Id. ¶ 7).

Dover advised Haygood that he could secure a $3,000,000 loan (the "Loan") from the Gilmer County Bank, of which he was a director, if Haygood pledged his real property at 1302 Rackley Road, Ellijay, Georgia, (the "Property") as collateral. (Id. ¶ 8). Dover assured Haygood that the Falling Waters Project was profitable and would return large profits for his investment. (Id. ¶ 9).

On September 13, 2007, in anticipation of Haygood pledging the Property as collateral for the Loan, Gilmer County Bank obtained an appraisal of the Property, which valued it at $2,640,000 (the "First Appraisal"). (Id. ¶¶ 11-12).

On September 20, 2007, because the First Appraisal indicated the Property was worth less than the Loan amount, Gilmer County Bank obtained a second appraisal of the Property, which valued it at $3,510,000 (the "Second Appraisal"). (Id. ¶ 14).

On September 21, 2007, Haygood signed a Promissory Note (the "Note")
and Security Deed and Agreement (the "Security Deed"), pledging the Property as
collateral for the Loan. (Id. ¶¶ 19-21). Haygood did not know that two appraisals
were conducted and did not ask to see a copy of the First or Second Appraisal prior
to signing the Note and Security Deed. (Id. ¶¶ 16-18; Ex. D to Pls.' Resp. to Def.
CSB's Mot. to Dismiss Pls.' First Am. Compl. ("Haygood Aff.") ¶¶ 3-6; Haygood
Dep. [14.1] at 22:9-14).

After obtaining the Loan, Haygood provided Dover with the $3,000,000 in
loan proceeds he received from the Gilmer County Bank, as well as an additional
$2,200,000 from his own funds, as his investment in the Falling Waters Project.
(Am. Compl. ¶¶ 23-24). To protect their investment in the Falling Waters Project,
Plaintiffs subsequently provided an additional $2,425,000 in funds and signed
guarantee agreements in connection with other loans issued by Gilmer County
Bank to different investors in the Falling Waters Project. (Id. ¶¶ 26-28, 30, 34-43).

On March 19, 2010, after the Appalachian Community Bank and Gilmer
County Bank failed and were closed by the Georgia Department of Banking and
Finance, the Federal Deposit Insurance Corporation was appointed as receiver
("FDIC-R"). (Id. ¶ 44; Ex. C to Pls.' Resp. to Def. CSB's Mot. to Dismiss Pls.'
First Am. Compl. at 1). FDIC-R provided notice to creditors of the former

Appalachian Community Bank and Gilmer County Bank that any claims against those failed institutions were required to be filed by the claims-bar date of June 29, 2010. (See Am. Compl. ¶¶ 53-54; Ex. C to Pls.' Resp. to Def. CSB's Mot. to Dismiss Pls.' First Am. Compl. at 1). Plaintiffs were not notified of the claims-bar date because they were not creditors and had not asserted any claims against the failed banks.

On March 19, 2010, CSB purchased, from the FDIC-R, the assets of the former Appalachian Community Bank, to include the loans at issue in this action that were made to Plaintiffs or for which Plaintiffs signed guarantee agreements. (Am. Compl. ¶ 45).

On September 28, 2011, Plaintiffs, through counsel, filed a claim with FDIC-R regarding the Loan and guarantees and stated

> In 2007, [Plaintiffs] were persuaded by Alan Dover, a director of CSB affiliate Gilmer County Bank, to invest in a real estate development that failed shortly thereafter. However, it was only this year that [Plaintiffs] learned of the fraudulent concealment and scheme related to their participation in the development. As it turns out, the initial $3 million loan provided to Mr. Haygood from Gilmer County Bank, all of which went to Mr. Dover, was procured by a fraudulent appraisal commissioned by the bank. The details regarding the scheme are recounted in the enclosed Answer, Affirmative Defenses and Counterclaim filed in a lawsuit brough[t] by CSB a few months ago. The Counterclaim begins on page 11. Also enclosed are the two appraisals at issue. The $4,625,000 represents out of pocket payments to Mr. Dover (separate and apart from the funds from the $3 million loan) that never would have

4

been made had the bank not procured the fraudulent appraisal.
Demand is hereby made for payment of $4,625,000.

While we acknowledge the filing date for claims was June 29,
2010, we do not believe our clients' claims are time-barred due to
the concealment of the initial appraisal and the recent discovery of
the claims. We would appreciate a prompt response to this claim
so that, in the event these claims are disallowed, they may be
further pursued in the Superior Court of Cherokee County.

(Ex. B to Pls.' Resp. to Def. CSB's Mot. to Dismiss Pls.' First Am. Compl. at 1-2).

On November 29, 2011, FDIC-R disallowed Plaintiffs' claim because it

determined that the claim must be disallowed as untimely
inasmuch as the claim accrued prior to the date of receivership,
[Plaintiffs] [were] aware of the closing of the failed bank and the
appointment of the FDIC as its receiver, and the counterclaim
alleges actionable conduct known by the Claimant prior to the
Claims Bar Date, which, if true, would be sufficient to file a proof
of claim.

(Ex. C to Pls.' Resp. to Def. CSB's Mot. to Dismiss Pls.' First Am. Compl. at 1).

On January 28, 2012, Plaintiffs filed their Complaint, which they amended

on February 28, 2012.[1]  Plaintiffs assert four causes of action.  Count I seeks

declaratory relief rendering void and unenforceable the Note, Security Deed, and

"[a]ny and all notes, guarantee agreements, security deeds or other loan

---

[1] "A claimant may obtain judicial review of the FDIC's claim determination if the
claimant files a claim with the FDIC, receives a 'disallowance' of the claim, and
then files suit in a district court within 60 days of the FDIC's disallowance."
Carlyle Towers Condo. Ass'n, Inc. v. FDIC, 170 F.3d 301, 305 (2d Cir. 1999)
(citing 12 U.S.C. § 1821(d)(6)(A)).  It is undisputed that Plaintiffs filed their
Complaint within sixty (60) days of the disallowance of their claim.

documents" signed by Plaintiffs in favor of Appalachian Community Bank and Gilmer County Bank, as CSB's predecessors.  (Am. Compl. ¶¶ 59-67).  Count II seeks "Damages Based on Fraud and Misrepresentation, Concealment, Coercion, Duress, and Undue Influence" based on Defendants' allegedly fraudulent concealment of the First Appraisal and the actions which led to the Second Appraisal.  (Id. ¶¶ 68-80).  Counts III and IV seek litigation expenses and punitive damages based on Counts I and II.  (Id. ¶¶ 81-85).

To rebut FDIC-R's assertion that their "failure to timely file a claim by the bar date precludes any further proceedings, rights or remedies on [their] claim," Plaintiffs assert they "were unaware of the fraud committed by Defendant CSB's predecessor until 2011, well after the claims bar date" and their claims did not accrue under Georgia law until 2011 when they discovered the "fraudulent concealment" of the First and Second Appraisal by CSB's predecessor.  (Am. Compl. ¶¶ 54-56, 73; Ex. C to Pls.' Resp. to Def. CSB's Mot. to Dismiss Pls.' First Am. Compl. at 1).  On these grounds, Plaintiffs assert their claims are not subject to the June 29, 2010, claims-bar date that would otherwise divest this Court of jurisdiction pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").  (Am. Compl. ¶¶ 58, 73).

On March 13, and April 27, 2012, CSB and FDIC-R, respectively, filed their Motions to Dismiss on the grounds that this Court lacks jurisdiction to hear Plaintiffs' claims and, alternatively, Plaintiffs fail to state a claim upon which relief may be granted [11, 20].

On April 5, 2012, Plaintiffs filed their Motion for Leave to File Surreply in Opposition to CSB's Reply Brief in Support of its Motion to Dismiss [18].

The Court addresses: (1) whether Plaintiffs shall be permitted to file a surreply; (2) whether this Court has jurisdiction to hear Plaintiffs' claims; and, (3) whether Plaintiffs state a claim upon which relief may be granted.

## II.    DISCUSSION

### A.    Plaintiffs' request to file a surreply

Neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorize the filing of surreplies as a matter of right or in the ordinary course of litigation.  See Byrom v. Delta Family Care—Disability and Survivorship Plan, 343 F. Supp. 2d 1163, 1188 (N.D. Ga. 2004); LR 7.1 C., 56.1 A., NDGa. Although the Court may permit the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief or to allow a party to rebut new allegations made in an opposing party's

surreply.  See, e.g., <u>Fedrick v. Mercedes-Benz USA, LLC</u> , 366 F. Supp. 2d 1190,

1197 (N.D. Ga. 2005); <u>Hammett v. Am. Bankers Ins. Co.</u>, 203 F.R.D. 690, 695 n.1

(S.D. Fla. 2001) ("Because Plaintiff presented new arguments and a new theory for

certification in her Reply the Court will grant Defendants' Motion for Leave to File

a Sur-Reply . . . ."); <u>White v. Georgia</u>, No. 1:07-cv-01739-WSD, 2007 WL

3170105, at *2-*3 (N.D. Ga. Oct. 25, 2007).  This Court previously has warned

that "[t]o allow such surreplies as a regular practice would put the court in the

position of refereeing an endless volley of briefs."  <u>Garrison v. Northeast Georgia

Med. Ctr., Inc.</u>, 66 F. Supp. 2d 1336, 1340 (N.D. Ga. 1999) (denying party's

request for leave to file a surreply).

Plaintiffs seek leave to file a surreply on the grounds that CSB raised new

arguments in its reply brief on its Motion to Dismiss that warrant further briefing,

specifically regarding CSB's status as a holder in due course and Plaintiffs'

justifiable reliance on the lack of being provided the First and Second Appraisal to

support its fraud claim under Georgia law.  (Pls.' Br. in Supp. of its Mot. for Leave

to File Surreply in Opp'n to CSB's Reply Br. in Supp. of its Mot. to Dismiss at 1-

2).  CSB opposes Plaintiffs' request to file a surreply because its reply brief did not

raise new arguments, but addressed issues raised by Plaintiffs' claims and their

response to CSB's Motion to Dismiss.  (CSB's Br. in Opp'n to Pls.' Mot. for

Leave to File Surreply in Opp'n to CSB's Reply Br. in Supp. of its Mot. to Dismiss at 3-4).

Plaintiffs' response raised the issue of whether CSB was a holder in due course when it cited to the Georgia commercial code and addressed their fraud claims, an element of which is justifiable reliance on the alleged fraudulent misrepresentation caused by the withholding of the appraisals. (Pls.' Resp. to CSB's Mot. to Dismiss at 1, 6, 12-13). Because there were no new arguments raised in CSB's reply brief that were not already raised in Plaintiffs' response to CSB's Motion to Dismiss, the Court finds additional briefing is not warranted and Plaintiffs' request to file a surreply is denied.

B.      Standard for Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction

CSB and FDIC-R seek dismissal of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and challenge the Court's exercise of jurisdiction over Plaintiffs' claims based on FIRREA's statutory bar. 12 U.S.C. § 1821(d)(13)(D). Because jurisdiction is a threshold question the Court must address, the Court must first consider whether FIRREA deprives this Court of jurisdiction over Plaintiffs' claims or otherwise prohibits the assertion of claims that were not made by the June 29, 2010, claims-bar date.

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits litigants to move for dismissal when the court lacks jurisdiction over the subject matter of the dispute. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be either a "facial" or "factual" attack. Morrison v. Amway Corp., 323 F.3d 920, 924-25 n.5 (11th Cir. 2003). A facial attack challenges subject matter jurisdiction on the basis of the allegations in the complaint. Id. In reviewing a complaint for a facial attack on subject matter jurisdiction, presumptive truthfulness attaches to the plaintiff's allegations, and the "court is required 'merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction.'" Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1233 (11th Cir. 2008).

Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. Id. In a factual attack, the plaintiff has the burden of proving that jurisdiction exists. Brown v. Cranford Transp. Serv., Inc., 244 F. Supp. 2d 1314, 1317 (N.D. Ga. 2002). When resolving a factual attack, the Court may consider extrinsic evidence, such as testimony and affidavits. Stalley, 524 F.3d at 1233. In analyzing a factual attack, the presumption of truthfulness afforded to a plaintiff's

allegations under Federal Rule Civil Procedure 12(b)(6) does not attach, but a court must take the facts in the light most favorable to plaintiff.  See U.S. Aviation Underwriters, Inc. v. United States, 562 F.3d 1297, 1299 (11th Cir. 2009); Scarfo v. Ginsberg, 175 F.3d 957, 960-61 (11th Cir. 1999).

In a factual attack, "[t]he district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)).  If a district court resolves disputed issues of fact on a factual challenge to jurisdiction, it must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss.  Id. (citing Williamson, 645 F.2d at 414 ("the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss.")).

Because Defendants base their jurisdictional challenge under FIRREA, in part, on deposition testimony provided by Haygood that indicates he knew CSB had been placed in receivership as of March 19, 2010, the Court considers

Defendants' challenge to jurisdiction to be a factual attack.  See Morrison, 323 F.3d at 924-25 n.5 (finding "motion to dismiss was a factual attack because it relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings").

C.     The Financial Institutions Reform, Recovery, and Enforcement Act's statutory bar

FIRREA provides that the FDIC has the power: "[t]o sue and be sued, and complain and defend, by and through its own attorneys, in any court of law or equity, State or Federal."  12 U.S.C. § 1819(a).  When the FDIC assumes control over a failed banking institution as a receiver, it stands in the shoes of that entity and assumes all its rights and liabilities in its assets.  See Resolution Trust Corp. v. United Trust Fund, Inc., 57 F.3d 1025, 1031, 1036 (11th Cir. 1995).

> In enacting FIRREA, Congress anticipated that, as a receiver for failed lending entities, the [FDIC-R] would face numerous claims from various parties.  Accordingly, it sought to reduce the volume of formal litigation that otherwise would have resulted by providing for administrative review of such claims by the [FDIC-R] before judicial proceedings could commence.  See 12 U.S.C. §§ 1821(d)(3)-(13).

Stamm v. Paul, 121 F.3d 635, 639 (11th Cir. 1997).

"Under FIRREA, federal courts generally lack the authority to decide claims against an institution in federal receivership until the claimant has exhausted his administrative remedies."  Aguilar v. Federal Deposit Insurance Corp., 63 F.3d

1059, 1061 (11th Cir. 1995). FIRREA provides that whenever the FDIC liquidates a bank and becomes a receiver, it must publish a notice that informs claimants where to file claims and the date ("claims-bar date") by which the claimants must file their claims. 12 U.S.C. § 1821(d)(3)(B). For claimants whose names and addresses appear in the books of the failed bank, the FDIC-R must mail the claimants a copy of the notice. Id. § 1821(d)(3)(C). For all other claimants, the FDIC-R may publish the notice. Id. § 1821(d)(3)(B)(i).

After receiving notice, the claimant must then file his claim with the receiver before the claims-bar date or forfeit the opportunity to present or litigate that claim. Id. § 1821(d)(5)(C)(i) ("claims filed after the date specified in the notice . . . shall be disallowed and such disallowance shall be final"). If a claim is disallowed, the claimant may bring an action federal court within sixty (60) days of the disallowance, otherwise "the disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." Id. § 1821(d)(6)(B)(ii). FIRREA allows a claimant, who timely files a claim, to file suit against the FDIC-R in federal district court after the claim is denied "for relief on the underlying claim. Such a suit ignores the [FDIC-R's] disallowance and allows _de novo_ examination of the claim by the federal courts." Helm v. Resolution Trust Corp., 43 F.3d 1163, 1165 (7th Cir. 1995).

This statutory exhaustion requirement of FIRREA generally applies to post-receivership claims, which are "claims related to conduct by the failed financial institution that the aggrieved party neglects to assert until after the [FDIC-R] assumes control over the lending entity." Stamm, 121 F.3d at 639. The statutory exhaustion requirement of FIRREA also applies to claims against financial institutions that purchase loans from the FDIC as receiver for a failed institution. See Am. First Fed., Inc. v. Lake Forest Park, Inc., 198 F.3d 1259, 1263 n.3 (11th Cir. 1999).

There are exceptions to FIRREA's statutory bar. "If the receiver fails to give proper notice, the FIRREA claims process is not initiated, and the time period for filing claims only begins to run after the receiver has properly complied with the notice requirements." FDIC v. Lacentra Trucking, Inc., 157 F.3d 1292, 1297 n.2 (11th Cir. 1998). A receiver is also permitted to consider claims if the claimant did not know about the appointment of the receiver in time to file its claim before the claims-bar date, but still filed its claim "in time to permit payment." See 12 U.S.C. § 1821(d)(5)(C)(ii) ("claim may be considered by the receiver if . . . the claimant did not receive notice of the appointment of the receiver in time to file such claim before [the claims-bar date]; and . . . such claim is filed in time to permit payment of such claim"); Stamm, 121 F.3d at 641.

"Courts have interpreted 'in time to file such claim' narrowly to mean 'at a time when the claimant could have filed such a claim.'" <u>Campbell v. FDIC</u>, 676 F.3d 615, 618 (7th Cir. 2012) (quoting <u>Stamm</u>, 121 F.3d at 641). "[T]herefore, where . . . a claim arises after the [claims-bar date], the claimant did not receive notice of the [FDIC-R]'s appointment at a time when he or she could have filed that claim and thus, the exception to the administrative bar applies." <u>Stamm</u>, 121 F.3d at 641; <u>see also</u> <u>Campbell</u>, 676 F.3d at 618 (exception applies where party does not learn of existence of a claim until after the claims-bar date). "[C]ourts that have granted exceptions [under this rule] have done so only when claims arose after the bar date had elapsed." <u>Campbell</u>, 676 F.3d at 619 (citing <u>Carlyle Towers Condo. Ass'n, Inc. v. FDIC</u>, 170 F.3d 301, 305-06 (2d Cir. 1999)). This exception will thus apply for a post-receivership claim that accrues after the claims-bar date expires.

     D.    <u>Whether Plaintiffs' claims are barred by FIRREA</u>

It is undisputed that Plaintiffs did not file a claim with the FDIC-R prior to the claims-bar date of June 29, 2010. Plaintiffs bring post-receivership claims against Defendants that they assert fall within an exception to the claims-bar date under FIRREA because they did not know about the appointment of the receiver at

a time when they could have filed their claims.  See 12 U.S.C. § 1821(d)(5)(C)(ii);

Campbell, 676 F.3d at 618-19; Stamm, 121 F.3d at 641.

Plaintiffs knew here that the Appalachian Community and Gilmer County

Banks went into receivership and they knew this information on the day the banks

failed.  Haygood personally had knowledge of the receivership.  (Haygood Dep. at

60:7-9).  The claim that Plaintiffs did not know of the FDIC's appointment as

receiver in time to file a claim fails because Haygood: (1) admits that he knew that

the banks failed on March 19, 2010, when they were closed by the Georgia

Department of Banking and Finance; (2) had previously served as a bank director;

and, (3) was on notice that the banks were in receivership based on that

knowledge.  See Campbell, 676 F.3d at 621 (citing Elmco Props., Inc. v. Second

Nat'l Sav. Ass'n, 94 F.3d 914, 921 (4th Cir. 1996) (noting that courts should

consider "if . . . [plaintiff] actually knew enough about the situation to place [him]

on 'inquiry notice' as to the details of the administrative process) and

Intercontinental Travel Mktg., Inc. v. FDIC, 45 F.3d 1278, 1286 (9th Cir. 1994)

(finding claimant with actual notice of receivership was on "inquiry notice of the

claims bar date")); (Haygood Dep. at 7:18-23); see also Freeman v. FDIC, 56 F.3d

1394, 1402 (D.C. Cir. 1995).

The Court next considers whether Plaintiffs learned of the existence of the receiver at a time when they could have filed their claims, that is whether Plaintiffs' asserted fraud claims against the receiver accrued at the time the claims-bar date elapsed on June 29, 2010.

"A statute of limitations begins to run 'on the date that suit on the claim can first be brought.'" Baker v. Brannen/Goddard Co., 559 S.E.2d 450, 454 (Ga. 2002). A fraud claim accrues when the plaintiff learns that the fraudulent acts occurred and actual damages from the alleged fraud accrue "and until such damages are sustained, the cause of action is not complete and the prescriptive period cannot run." See O.C.G.A. § 9-3-96; Green v. White, 494 S.E.2d 681, 685 (Ga. Ct. App. 1997). Mere ignorance of the fraudulent act or accrual of actual damages does not toll the accrual date for a fraud claim because a party "must exercise reasonable diligence to learn of the existence of a cause of action." Fidelity & Deposit Co. of Md. v. Sun Life Ins. Co. of Am., 329 S.E.2d 517, 521 (Ga. Ct. App. 1985) (quoting Limoli v. First Ga. Bank, 250 S.E.2d 155, 157 (Ga. Ct. App. 1978)).

Assuming that Plaintiffs may state a valid claim of fraud against Defendants for the purpose of determining whether FIRREA's jurisdictional bar applies, the

Court finds their claims fall within FIRREA's exception because they arguably did not accrue prior the claims-bar date.

Plaintiffs allege in their Amended Complaint that they did not learn, until February 2011, of the allegedly fraudulent conduct of the board of directors of Appalachian County Bank and Gilmer County Bank relating to the First and Second Appraisal when Haygood discovered that there was a First Appraisal that had been withheld from him and a Second Appraisal that had been fraudulently obtained.  (Am. Compl. ¶¶ 16-17, 71-73).  Plaintiffs further allege that even if they had exercised due diligence, Defendants' failure to provide, and fraudulent concealment of, the appraisals prevented them from learning of the fraud until February 2011, when Haygood obtained copies of the First and Second Appraisals. (Id.).

Accepting Plaintiffs' allegations in the light most favorable to them and reviewing the record in this factual attack on jurisdiction, the Court finds that FIRREA's jurisdictional bar does not preclude Plaintiffs from asserting their claims in this action because they arguably did not learn of their potential fraud claims until after the claims-bar date and subsequently exhausted their administrative remedies by filing a claim with the FDIC-R, which was denied,

prior to filing this action.  See Campbell, 676 F.3d at 618-19; Carlyle, 170 F.3d at 305-06; Stamm, 121 F.3d at 641.

Having determined that FIRREA's claims-bar provisions do not deprive the Court of jurisdiction to consider Plaintiffs' claims, the Court next addresses CSB's and FDIC-R's claim that Plaintiffs fail to state a claim and this action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

E.      Standard on a Rule 12(b)(6) motion to dismiss

The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-settled.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (dismissal appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action").

In considering a motion to dismiss, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010), cert. denied, 132 S. Ct. 245 (2011).  Although reasonable

inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)). Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010).

The complaint ultimately is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.[2] Mere "labels and conclusions" are insufficient. Id. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully" or the "mere possibility of misconduct," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and

---

[2] The Supreme Court explicitly rejected its earlier formulation for the Rule 12(b)(6) pleading standard: "'[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Twombly, 550 U.S. at 577 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Court decided that "this famous observation has earned its retirement." Id. at 563.

plausibility of 'entitlement to relief.'"  Id. at 678-79 (citing Twombly, 550 U.S. at

557).  The well-pled allegations in a complaint must "'nudge[] [a party's] claims

across the line from conceivable to plausible.'"  Am. Dental, 605 F.3d at 1289

(quoting Twombly, 550 U.S. at 570).[3]

> F.   Whether Plaintiffs' Amended Complaint fails to state a plausible
>      claim upon which relief can be granted

Besides their request for declaratory relief, litigation expenses, and punitive

damages, Plaintiffs' substantive claim, Count II, is styled "Damages Based on

Fraud and Misrepresentation, Concealment, Coercion, Duress, and Undue

Influence."  Count II is a fraud claim based on Plaintiffs allegation that they were

defrauded when the September 13, 2007, appraisal was fraudulently concealed

from them and "CSB's predecessor and/or its Officers, Directors and/or agents

fraudulently concealed their acts which led to the fraudulent September [20], 2007

appraisal."  (Am. Compl. ¶¶ 12, 14, 71-72).

---

[3] Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and
plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal minimal
standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual
allegations must be enough to raise a right to relief above the speculative
level . . . ."  Twombly, 550 U.S. at 555.

FDIC-R claims the allegations in Count II fail to satisfy the pleading requirements for fraud under Federal Rule of Civil Procedure 9(b).[4] FDIC-R further claims that even if Rule 9(b) is satisfied, Plaintiffs fail to state a claim for fraud as a matter of law because Plaintiffs cannot have justifiably relied upon the statements and appraisal information obtained by "CSB's predecessor and/or its Officers, Directors and/or agents" because, under Georgia law, there is no duty, based on a confidential or fiduciary relationship, for a lender to disclose facts regarding an appraisal it obtains as part of a loan transaction.

>   1.  *Whether Plaintiffs satisfy Rule 9(b)'s heightened pleading requirements for fraud claims*

In Georgia, plaintiffs alleging fraud must establish five (5) elements: "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff."

---

[4] CSB, in its Motion to Dismiss, claims Plaintiffs fail to state a claim upon which relief may be granted and, additionally, that there is no basis for this Court to exercise jurisdiction over the claims against CSB. (CSB's Memo. in Supp. of its Mot. to Dismiss at 1, 5-6). The Court finds that it has supplemental jurisdiction over Plaintiffs' claims against CSB in this action because it has jurisdiction over the claims against FDIC-R pursuant to FIRREA. See 12 U.S.C. § 1819(a), 1821(d)(6); 28 U.S.C. § 1367; First Union Nat'l Bank of Fla. v. Hall, 123 F.3d 1374, 1377-78 (11th Cir. 1997); Reinke v. Darby Bank & Trust Co., No. CV411-144, at *2-*3, *6 (S.D. Ga. Mar. 30, 2012). The Court below addresses CSB's claim that Plaintiffs fail to state a claim upon which relief may be granted.

<u>Baxter v. Fairfield Fin. Servs.</u>, 704 S.E.2d 423, 429 (Ga. Ct. App. 2010) (citation omitted).

Rule 9(b) of the Federal Rules of Civil Procedure further requires plaintiffs alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Eleventh Circuit has consistently held:

> To comply with Rule 9(b), a complaint must set forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

<u>Thomas v. Pentagon Fed. Credit Union</u>, 393 F. App'x 635, 638 (11th Cir. 2010) (mortgagor failed to allege facts with sufficient particularity to state fraud claim against mortgagee where he did not identify any specific statements made by mortgagee and failed to identify time and place of an omission, person responsible for making an omission, and what mortgagee obtained as a consequence of fraud); <u>see also</u> <u>Mizzaro v. Home Depot, Inc.</u>, 544 F.3d 1230, 1237 (11th Cir. 2008).

The Court finds that Plaintiffs fail to satisfy the pleading requirements of Rule 9(b). Although Plaintiffs assert that the statements in the loan transaction and appraisals constituted the omissions that were used to mislead Plaintiffs into providing Defendants their consent to the $3,000,000 loan, Plaintiffs have not

specified "the time and place of each such [omission] and the person responsible for making (or, in the case of omissions, not making) same." See Thomas, 393 F. App'x  at 638.  Beyond a generic and conclusory statement that that "CSB's predecessor and/or its Officers, Directors and/or agents" committed "wrongful acts" and "fraudulently concealed" the appraisal information, Plaintiffs have not met their burden of pleading sufficient facts about the alleged fraud because no person is identified as being responsible for the omissions, the manner in which the omissions were made is not specified, Plaintiffs have not explained how the omission of the First or Second Appraisals misled them, and it is not clear what benefit Defendants received as a result of those omissions.  See id.; (Am. Compl. ¶¶ 70-79).[5]  Count II of Plaintiffs' Complaint is required to be dismissed on this ground.[6]

---

[5] Apparently, Plaintiffs, before guaranteeing the loans at issue, did not ask if there were any appraisals for the Property on which the Loan was made.

[6] To the extent Plaintiffs conclusorily assert claims of "duress," "undue influence," or "coercion" in the making of contracts in their request for declaratory relief in Count I, the Court finds they fail to state a claim for relief because they have not pled the elements of these claims or sufficiently articulated a basis for voiding any of the notes, security deeds, or guarantees at issue in this action.  (Am. Compl. ¶¶ 59-67).  The Court further finds that because Count I relies upon the claim of fraud in Count II as a basis for seeking declaratory relief declaring void and unenforceable all of Plaintiffs' obligations on the loans at issue in this action, Count I should also be dismissed based on Plaintiffs' failure to state a claim in Count II.  Because Counts III and IV are for punitive damages and litigation expenses based on the successful prosecution of the fraud-based claims in Counts I

## 2. Whether Plaintiffs state a claim upon which relief may be granted

Even if Plaintiffs satisfied the heightened pleading requirements under Rule 9(b)—which the Court finds they do not—the Court would find they fail to state a claim upon which relief may be granted based on their claims of fraudulent concealment of the appraisals because Defendants had no obligation to provide the appraisal information to Plaintiffs as part of the loan transaction.

Plaintiffs assert that Defendants owed Plaintiffs a duty to disclose facts regarding the loan transaction at issue, specifically the appraisals of the Property and the failure to disclose the appraisals at the time of the loan constituted an act of fraud.[7]

The Court disagrees because it is well settled under Georgia law that there is no confidential or fiduciary relationship between a borrower and a lender or its agent. See Habib v. Bank of Am. Corp., No. 1:10-CV-4079-TWT-RGV, 2011 WL 5239723, at *3 (N.D. Ga. Sept. 29, 2011), adopted by 2011 WL 5239713 (N.D.

---

and II, these counts are also required to be dismissed based on Plaintiffs' failure to state a claim for relief.

[7] The Court notes that the authorities cited by Plaintiffs do not support their proposition that a bank owes a borrower a duty to disclose appraisals of property securing a loan prior to making that loan. See O.C.G.A. § 23-2-53; ASC Constr. Equip. USA, Inc. v. City Commercial Real Estate, Inc., 693 S.E.2d 559, 565 (Ga. Ct. App. 2010); McLendon v. Ga. Kaolin Co., Inc., 837 F. Supp. 1231, 1240 (M.D. Ga. 1993).

Ga. Oct. 28, 2011) (Thrash, J.) (citing In re Telfair, 224 B.R. 243, 250 (Bankr. S.D. Ga. 1998); May v. Citizens & S. Nat'l Bank, 413 S.E.2d 780, 782 (Ga. Ct. App. 1991); Pardue v. Bankers First Fed. Sav. & Loan Ass'n, 334 S.E.2d 926, 926-27 (Ga. Ct. App. 1985)); see also Moore v. Bank of Fitzgerald, 483 S.E.2d 135, 139 (Ga. Ct. App. 1997).

"Although the suppression of certain information can, in some cases, constitute an actionable tort [for fraud], 'there must exist an obligation to disclose before there can be fraud by failure to communicate a material fact.'" Harrouk v. Fierman, 662 S.E.2d 892, 895 (Ga. Ct. App. 2008); see also DaimlerChrysler Motors Co., LLC v. Clemente, 668 S.E.2d 737, 753 (Ga. Ct. App. 2008) ("Significantly, 'an obligation to disclose must exist before a party may be held liable for fraud based on concealment of material facts.'"). "The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." O.C.G.A. § 23-2-53.

Georgia courts have stated that arm's length financial transactions between a borrower and a bank, as in the case here, do not involve a confidential relationship that relieves a borrower from his responsibility to exercise caution and reasonable diligence in the transaction. See Limoli, 250 S.E.2d at 157; see also Dixie Diners Atlanta, Inc. v. Gwinnett Fed. Bank, FSB, 439 S.E.2d 53, 56 (Ga. Ct. App. 1993)

(quoting Pardue v. Bankers First Fed. Sav. & Loan Ass'n, 334 S.E.2d 926, 927

(Ga. Ct. App. 1985)) ("There is, moreover, particularly no confidential relationship

between lender and borrower . . . for they are creditor and debtor with clearly

opposite interests."); First Union Nat'l Bank of Ga. v. Gurley, 431 S.E.2d 379, 381

(Ga. Ct. App. 1993) ("[T]he law is clear that a bank owes no legal duty to act as a

customer's legal or financial advisor.").  Specifically, the concealment of an

appraisal obtained by a bank cannot serve as the basis for a claim of fraud because

appraisal information obtained by a bank "is simply an opinion of the value of real

estate" that a borrower cannot justifiably rely upon, a borrower is free to obtain

their own appraisal, and a bank has "no obligation to disclose information that is

equally available to both parties."  See Baxter, 704 S.E.2d at 430; Coote v. Branch

Banking & Trust Co., 664 S.E.2d 554, 556-57 (Ga. Ct. App. 2008) (quoting

Donchi, Inc. v. Robdol, LLC, 640 S.E.2d 719, 723 (Ga. Ct. App. 2007)).

Plaintiffs have not alleged or offered legal support for the proposition that

there was a confidential relationship between Plaintiffs and Defendants, that the

loan transactions at issue were anything other than arm's length transactions

between a sophisticated investor and a financial institution, or that Plaintiffs were

prevented from obtaining their own appraisal of the Property prior to signing the

Note and Security Deed.

Rather, the Amended Complaint alleges that Plaintiffs entered into an arm's length financial transaction and were not provided an appraisal at the time of the transaction. After the real estate development project failed and Plaintiffs sought additional documentation from Defendants, Plaintiffs discovered appraisals obtained by the Gilmer County Bank that were not provided to them. These appraisals were not required to be disclosed by Defendants based on a statutory or confidential-relationship duty and Plaintiffs were free to obtain their own appraisals. Under the circumstances here, the Court finds Plaintiffs fail to state a claim for fraud because there can be no justifiable reliance based on Defendants' failure to disclose the appraisals.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to File Surreply in Opposition to CSB's Reply Brief in Support of its Motion to Dismiss [18] is **DENIED**.

**IT IS HEREBY FURTHER ORDERED** that CSB's Motion to Dismiss Plaintiff's First Amended Complaint [11] and FDIC-R's Motion to Dismiss [20] are **GRANTED**.

**SO ORDERED** this 21st day of December, 2012.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE